MURPHY, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.*

*No. 175. Submitted under sec. (Rule) 251.54 February 6, 1974.— Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 370.)

* Motion for rehearing denied, without costs on June 28, 1974.

The cause was submitted for the appellant on the brief of *Max E. Geline* of Milwaukee; for respondent Department of Industry, Labor & Human Relations on the brief of *Robert W. Warren,* attorney general, and *Donald P. Johns,* assistant attorney general; and for respondents Bohrman Manufacturing Co., Inc., and United States Fidelity & Guaranty Company, on the brief of *Borgelt, Powell, Peterson & Frauen* of Milwaukee.

WILKIE, J. The only issue involved on this appeal is whether the original order of November 14, 1968, af-

firmed by the department on January 17, 1969, is res adjudicata, or is sec. 102.18 (5), Stats., allowing for the correction of a department order entered by mistake, applicable to this situation.

In 1971, the DILHR examiner concluded (as affirmed by the department) that it did not appear that a mistake had been made in the 1968–1969 proceedings. In the 1971 findings of fact there is a specific finding that the physicians who testified at the original hearing did consider the question of whether the applicant's work did cause injury to the applicant in the nature of an occupational disease, that the testimony set forth a complete description of the applicant's work, and that the order of the department, dated January 17, 1969, states as a further finding of fact that "it would be speculative and conjectural to find that the applicant sustained injury on or about May 4, 1967 or at any other time while employed by the respondent."

The trial court, in its 1972 decision affirming the latest findings of the department, also concluded that the claim of occupational disease had been fully litigated and that the finding of the original examiner that

". . . 'it would be speculative and conjectural to find that the applicant sustained injury on or about May 4, 1967, or at any other time while employed by the respondent; that the applicant did not sustain accidental injury in the course of and arising out of her employment;' . . ."

must be understood to encompass a finding of both no accident and no occupational disease for the definition of "injury" in sec. 102.01 (2) (d), Stats., is "mental or physical harm to an employee caused by accident or disease."

We are satisfied that there is credible evidence to support the 1968–1969 determination of the department, as affirmed by the trial court. There was extensive testi-

mony on the nature of the applicant's work, including the number of bending and twisting movements required to complete each deburring operation and the number of deburring operations she performed each day. The physician who testified for the applicant at the original hearing was not confining himself to a single incident of strain from lifting a particular casting. He testified as to the cause of the applicant's back strain:

"Her job consisted of picking up 18-pound castings from a crate on one side, putting them on a table in front of her, and then putting them over to the other side, and this was a highly repetitious movement with a moderate amount of weight. I believe this was done many hundreds of times during the day. It was my opinion that this was an occupational injury caused by the heavy lifting numerous times during that period of time."

The appellant, Helen Murphy, testified in her own behalf. She described the evening of May 4, 1967, when, after reaching into a crate, she felt a sharp pain in her arm and chest, a backache, that her legs felt numb and rubbery and that she had to sit down. She left work and within a few days was hospitalized. The hospital records were made part of the record and indicated that a series of tests were conducted, not focusing on back trouble as the source of the symptoms. The applicant in her testimony stated several times that she had not had any trouble until May 4, 1967. A signed statement made by Mrs. Murphy was also made part of the record. She stated at various points that:

". . . As I was putting the piece on the machine, I got a slight headache, a pain in my left arm and a pain across my chest sort of like a dull ache. It was a sudden pain and I felt like I might black out. My legs got 'rubbery' and I sat down on a box. . . . I had had a slight backache at work before I had my chest pain and it went away after the shot in the hospital. . . . I haven't had any back injuries doing this outside of normal aching. . . . On May 4 1967 the Thursday night I had

the chest pain I didn't have a 'jerk' or 'pull' to my back. The chest pain just happened and I had no injury to my back from lifting or any 'dropping' of sudden movement. . . ."

Another physician's report was received which indicated that the applicant was suffering from osteoarthritis of the spine, including spur formation in the lumbar spine. He concluded that:

". . . It is known, that this condition will produce symptoms in the spinal column, with or without an injury. Symptoms would be present if patient performed regular routine household chores.
". . .
"Symptoms are that of osteoarthritis and not related to her employment."

The real issue here is whether sec. 102.18 (5), Stats., applies in a situation where the original hearing considered the possibility of both accidental injury and injury caused by occupational disease. We think not. The wording of the statute clearly indicates that it is to apply to situations where the original order and award were based solely on the issue of an "accidental injury" and that reconsideration may be given within three years if it appears a mistake was made and occupational disease was actually the cause of the harm to the applicant.

*Rathjen v. Industrial Comm.*[1] considered the meaning of sec. 102.18 (5), Stats. In that case this court held that the circuit court did not have jurisdiction to review a decision of the commission refusing to reopen the case and stating that its decision was final. The petition for reconsideration was made after the time for appeal had run and this court concluded that sec. 102.18 (5) did not apply either.

". . . It follows that inasmuch as the facts alleged by plaintiff are insufficient to show that he is suffering

[1] (1940); 233 Wis. 452, 289 N. W. 618.

from an occupational disease and that a mistake has been made in awarding compensation for an injury instead of for an occupational disease, the provisions in sec. 102.18 (5), Stats., permitting the setting aside of an award within three years under such circumstances are not applicable." [2]

*Rathjen* supports our interpretation that sec. 102.18 (5) would not be applicable if a final order had previously been entered in which the question of occupational disease had been litigated. We conclude that sec. 102.18 (5) was completely inapplicable because the examiner in the 1971 proceedings correctly concluded that the 1968–1969 order denying compensation had actually ruled on both accidental injury and injury from occupational disease.

*By the Court.*—Judgment affirmed.